**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SCOTT DONALDSON, ET AL.** | **CIVIL ACTION NO. 19-14706** |
| **VERSUS** | **JUDGE JAY C. ZAINEY** |
| **SONESTA NOLA CORPORATION, ET AL.** | **MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Airbnb, Inc. ("Airbnb"), incorrectly sued as Airbnb Payments, Inc., respectfully submits this Memorandum in Support of Motion to Compel Arbitration and to Stay Litigation in response to the Petition for Damages filed by Scott Donaldson and Amy Donaldson ("Plaintiffs").

## I. INTRODUCTION

This lawsuit cannot proceed in this forum because the claims at issue here are subject to mandatory, individual contractual arbitration. Plaintiffs' Petition for Damages asserts wrongful death and survival claims against Airbnb Payments, Inc., Sonesta Nola Corporation, Jessie Muse, the Muse Company, LLC, Certain Underwriters at Lloyd's, London, and Zurich American Insurance Company (collectively "Defendants"). The Petition avers that Plaintiffs' son, Seth Donaldson, died as a result of falling through an allegedly faulty window located within Unit 1201 at 212 Loyola Ave in New Orleans, Louisiana 70112. Cassidy Carter, who has not been named in the lawsuit, booked the unit online through her Airbnb account.

Plaintiffs base their claims against Airbnb on a single allegation that the unit was rented using Airbnb's platform. Thus, Plaintiffs concede that their claims against Airbnb arise expressly out of the use of Airbnb's website and services. The relationship between Airbnb and Plaintiffs is

contractual, and is governed by Airbnb's Terms of Service ("TOS"), to which Plaintiffs agreed when they created their Airbnb accounts. The TOS includes an arbitration provision that requires individual arbitration of all disputes against Airbnb.

Airbnb's motion to compel and stay proceedings should be granted because Plaintiffs' claims fall within the scope of a valid arbitration agreement. Likewise, on a motion to compel arbitration, this Court's inquiry is limited to two questions: (1) whether Plaintiffs assented to the arbitration provision and, if so, (2) whether Plaintiffs' claims fall within its scope. Assent is unquestionably established here. Airbnb's records identify Cassidy Carter as the booking guest, and show that she, Seth Donaldson, Amy Donaldson, and Scott Donaldson each have an Airbnb account. Airbnb's records unambiguously show that each party individually assented to Airbnb's TOS, and to the arbitration agreement contained therein, when the individual created his/her Airbnb account. In fact, Airbnb's records further show that each Plaintiff confirmed the agreement to arbitrate when he/she assented to varying updated versions of the TOS, which include substantially the same binding arbitration provisions. *See* Exhibit 1, Affidavit of Kyle Miller ("Miller Aff.") ¶¶ 14, 20, 26, 32, Exs. E, J, H (indicating that Seth Donaldson, Amy Donaldson, and Cassidy Carter each consented to Version 8 of the TOS, which was the operative version at the time of the reservation, and that Scott Donaldson most recently consented to Version 6, containing substantially the same arbitration provision).

The Plaintiffs' assent to the TOS ends the Court's inquiry because the arbitration provision delegates all threshold issues regarding the arbitrability of Plaintiffs' claims to the arbitrator. The Supreme Court, the Ninth Circuit, the Fifth Circuit, California state courts, and Louisiana state courts agree that "clear and unmistakable" delegation clauses are enforceable and, when present,

all questions of arbitrability must be resolved by the arbitrator, not the court.[1] The delegation clause here is plainly "clear and unmistakable": the TOS expressly authorizes the arbitrator to resolve all issues pertaining to the breach, termination, validity, enforcement, or interpretation of the TOS, including the arbitration provision. Accordingly, whether Plaintiffs' particular claims fall within the scope of the TOS and whether any defense to arbitration exists are questions that should be resolved by the arbitrator, not this Court.

Courts have routinely enforced Airbnb's arbitration provision and compelled claims against Airbnb to arbitration. There are no facts here that would dictate a different result. Because assent is easily established, and the delegation clause is "clear and unmistakable," this Court should stay the litigation and compel arbitration.

## II. RELEVANT FACTUAL AND LEGAL BACKGROUND

### A. Plaintiffs' Allegations

Plaintiffs assert that Seth Donaldson was injured and died on October 28, 2018, as a result of falling out of an allegedly faulty exterior window of Unit 1201, located at 212 Loyola Avenue, New Orleans, Louisiana 70112 (the "Property"). Pet. ¶¶ 8, 19-22 (Doc. 1-1, pp. 3 & 5). Plaintiffs allege that the Property was advertised and booked online through Airbnb. *Id.*; *see* Miller Aff. ¶ 4. Plaintiffs claim that the window was not suitable for use as an exterior window in a commercial apartment. Pet. ¶¶ 22-23 (Doc. 1-1, p. 5). Plaintiffs aver that Airbnb Payments, Inc., Sonesta NOLA Corporation, Jessie Muse, and the Muse Company, LLC, together with their alleged insurers, Certain Underwriters at Lloyd's London, and Zurich American Insurance Company, are

[1] The Supreme Court recently reaffirmed this rule, holding that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract"—even in cases where one party asserts that the other party's argument that the arbitration agreement applies to their particular dispute is "wholly groundless." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

liable for damages arising from Seth Donaldson's death as custodians or warrantors of the Property. *See Pet.* (Doc. 1-1, pp. 1-15). Airbnb, however, operates a website, and has never owned, inspected, operated, or controlled the Property.

**B. The Terms of Service (TOS)**

**i. <u>The Airbnb Platform.</u>**

Airbnb provides an online platform that connects third-parties who wish to offer their unique accommodations (called "Hosts") with third-party travelers seeking to book accommodations (called "Guests"). Miller Aff. ¶ 2. As the TOS makes clear, Airbnb is not a party to these booking agreements, which are made directly between Hosts and Guests. *Id.* The Hosts alone are responsible for listing their accommodations on Airbnb's platform. *Id.* Airbnb does not own or control the accommodations that Hosts list; nor does it operate, manage, or otherwise have or grant any interest in such accommodations. *Id.* Simply put, Airbnb is not the owner, operator, innkeeper, or proprietor of any of the accommodations offered by Hosts on its platform.

**ii. <u>Plaintiffs Assented to the TOS.</u>**

The relationship between Airbnb and those who use its services and site is contractual and governed by the TOS. Before a user can book an accommodation through Airbnb's online platform, he/she must first consent to the TOS, which is presented via hyperlink during the account registration process; users must affirmatively click a checkbox next to the hyperlink that reads: "By signing up I agree to Airbnb's Terms of Service…." Miller Aff. ¶¶ 10, 16, 22, 28 & Exs. C, H, M, O. Airbnb captures and records the date upon which each user accepts the TOS in its business records. Airbnb's records confirm that each Plaintiff created his or her own Airbnb account and assented to the TOS on those dates. Amy Donaldson created her account on February 22, 2015, and consented to the TOS on that date. *Id.* ¶ 21. Scott Donaldson created his account on August 27, 2016, and consented to the TOS on the same date. *Id.* at ¶ 27. Airbnb's records

further confirm that Seth Donaldson created an Airbnb account on February 26, 2018, and consented to the TOS on that date. *Id.* ¶ 9. Likewise, the booking guest for the Property, Cassidy Carter, created an Airbnb account on February 26, 2017, and consented to the TOS on that date. *See id.* at ¶ 15.

Airbnb updates the TOS from time to time. When the TOS is updated, existing account holders must accept the updated TOS before they can access their existing accounts and/or book accommodations. Specifically, the first time that existing account holders access the Airbnb website after a TOS update, they are presented with a screen that: (1) notifies them of the nature of the update; and (2) presents a scroll box that includes the full text of the updated TOS. *Id.* ¶ 7. Account holders must click a checkbox next to a statement confirming that they "agree to the updated Terms of Service" and then click a button (located under the checkbox) indicating acceptance of the updated TOS in order to continue with their search. *Id.* Airbnb does not allow existing users to log in, interact with other users, create a listing, or book a reservation using the Airbnb platform until after they indicate their acceptance of the updated TOS. *Id.*

Airbnb's records confirm that, in addition to consenting to the TOS on the date each user created his or her account, each subsequently assented to the TOS at least one additional time. *Id.* ¶¶ 10, 14, 20, 26, 32. Amy Donaldson assented to the TOS six additional times. *Id.* ¶ 26. And Scott Donaldson assented to the TOS one additional time. *Id.* ¶ 32. Seth Donaldson subsequently assented to Version 8 of the TOS on June 29, 2018. *Id.* ¶¶ 10, 14. Cassidy Carter assented to the TOS three additional times. *Id.* ¶ 20.

Additionally, Airbnb's records show that the booking Guest, Cassidy Carter, booked the reservation using her online Airbnb account on October 24, 2018, and reserved the Property for the dates October 26, 2018, through October 28, 2018. *See id.* at ¶ ¶ 4, 33.

### iii. The TOS Requires Individual Arbitration of All Disputes.

The TOS applies broadly to any and all uses of Airbnb's online platform, content, and services. The very first paragraph of the version of Airbnb's TOS expressly notified Plaintiffs in **bold** that Section 19 includes an agreement to arbitrate all disputes. Miller Aff. ¶ 14, Ex. E (TOS), p. 1.[2] The paragraph states:

> **Please note: Section 19 of these Terms of Service contains an arbitration clause and class action waiver that applies to all Airbnb Members. If your country of residence (as defined below) is the United States, this provision applies to all disputes with Airbnb. If your country of residence is outside of the United States, this provision applies to any action you bring against Airbnb in the United States. It affects how disputes with Airbnb are resolved. By accepting these Terms of Service, you agree to be bound by this arbitration clause and class action waiver. Please read it carefully.**

TOS, p. 1 (bold in original).

The dispute resolution provision in Section 19.4 unequivocally requires arbitration, stating:

> **You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content (collectively, "Disputes") will be settled by binding arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

TOS, p. 20 (bold in original). The dispute resolution provision additionally precludes class claims and requires arbitration on an individual basis:

---

[2] Prior to booking the Property, Airbnb's records confirm that Cassidy Carter assented to this version, Version 8, of the TOS. Miller Aff. ¶ 20. Airbnb's business records also confirm that Amy Donaldson and Seth Donaldson assented to this version of the TOS. Miller Aff. ¶ 14, 26. Scott Donaldson consented to a different version of the TOS which includes substantively the same provision. *See* Miller Aff. ¶ 32, Ex. H, p. 1, § 34.

> **You and Airbnb acknowledge and agree that we are each waiving the right to a trial by jury as to all arbitrable Disputes. . . .You and Airbnb acknowledge and agree that we are each waving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney-general action, or any other representative proceeding as to all Disputes. Further, unless both you and Airbnb otherwise agree in writing, the arbitrator may not consolidate more than one party's claims and may not otherwise preside over any form of a class or representative proceeding. . . .**

TOS, p. 20-21, §§ 19.11-19.12 (bold in original).

In relevant part, the TOS also specifies that the Federal Arbitration Act governs the interpretation and enforcement of the arbitration clause, and that "these Terms will be interpreted in accordance with the laws of the State of California and the United States of America, without regard to its conflict-of-law-provisions." *Id*. at p. 20-21, §§ 19.6, 21.1.

## III. ARGUMENT

### A. The Federal Arbitration Act Governs

The arbitration provision in the TOS expressly states that it is governed by the Federal Arbitration Act ("FAA"): "the Federal Arbitration Act governs the interpretation and enforcement of this provision." TOS, § 19.6, p. 20. As the United States Supreme Court recently made clear, the FAA—and the body of federal law developed pursuant to it—governs the interpretation and application of an arbitration provision that is made expressly subject to its provisions. *DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (confirming parties can contractually agree to designate FAA as governing law). As the Supreme Court has further held, the FAA preempts any inconsistent state law. *Id.* (holding that the Supremacy Clause forbids state courts from dissociating themselves from federal law, and that as the law of the United States, "the judges of

every State must follow" the FAA).[3] Accordingly, the FAA and the body of federal law developed pursuant to it applies here.

**B. The Court Should Compel Arbitration of Plaintiffs' Claims Because Plaintiffs Agreed to Arbitrate Their Claims Against Airbnb**

Section 2 of the FAA codifies a strong federal policy favoring arbitration, making arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (federal policy requires rigorous enforcement of arbitration agreements). Section 2 creates a heavy presumption in favor of arbitrability that requires courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability [must] be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration . . ."); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989) ("settled" rule that questions of arbitrability in contracts subject to the FAA "must be resolved with a healthy regard for the federal policy favoring arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (while the parties' intentions control interpretation of a contract subject to the FAA, "those intentions are generously construed as to issues of arbitrability").[4]

---

[3] *See also Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/00), 908 So. 2d 1, 8 ("The United States Supreme Court has made it clear that the substantive provisions of the FAA preempt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce.")

[4] Although the question here is one of federal law, California state law, which controls the rest of the TOS, (*see* TOS at p. 22, § 21.1), also favors enforcement of the arbitration agreement. Cal. Code Civ. Proc. §§ 1281-1294; *Trujillo v Gomez*, 2015 U.S. Dist. LEXIS 51068, at *6-7 (S.D. Cal Apr. 17, 2015). California has a strong public policy in favor of arbitration. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 935 (Cal. 2015); *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227, 229 (1999) ("It is well established that under California law there is a strong public policy in favor of arbitration."). Indeed, like federal law and California law, "[t]he positive law of Louisiana favors arbitration

The strong presumption in favor of arbitration limits the court's analysis on a motion to compel arbitration to two questions: (1) whether the parties agreed to arbitrate (*i.e.*, whether they assented to the arbitration contract); and (2) if so, whether the agreement encompasses the asserted claims (*i.e.*, whether the claims asserted are within the scope of the arbitration contract). *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1283 (2008); *Jones v. Halliburton Co.*, 583 F. 3d 228, 233-34 (5th Cir. 2009) ("… to determine whether the party has agreed to arbitrate a dispute, our court must ask: '(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement.'"). In short, the two considerations are mutual assent and scope, and once the court finds that both are satisfied (as they are here), it must compel arbitration. *Chiron Corp.*, 2017 F.3d at 1130 (the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)); *see also Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998).

Airbnb's burden of establishing assent is not a heavy one, and it is easily satisfied here. Because arbitration agreements are contracts, assent is analyzed under ordinary principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995) (arbitration is a matter of contract law, and analysis turns on whether an agreement was formed). The TOS contains a California choice of law provision[5] and, under California law, assent is established by

---

as a preferred method of alternative resolution dispute." *Hodges v. Reasonover*, 2012-0043 (La. 7/2/12), 103 So. 3d 1069, 1072 (citing La. Rev. Stat. § 9:4201).

[5] *See* TOS at p. 22, § 21.1, p. Similarly, Louisiana courts routinely enforce choice-of-law provisions. *See Clark v. Legion Ins. Co.*, 2006-0320 (La. App. 4 Cir 11/29/06), 947 So. 2d 110, 114; *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012); *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250–

either actual or constructive knowledge of contract terms. Online contracts are no different than other contracts, and Courts applying California law regularly enforce "clickwrap" or "scroll-wrap" agreements—such as the TOS—because they require users to manifest their assent by clicking "Agree" or an equivalent button. *See* Miller Aff., Exs. C, H, M, O; *Loewn v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957-58 (N.D. Cal. 2015) (enforcing an arbitration provision within a TOS where Plaintiffs had the opportunity to scroll through the terms prior to assent and then clicked "I agree" to assent to the terms of the TOS); *Tompkins v. 23andMe, Inc.*, Case No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at *29-30 (N.D. Cal. June 25, 2014) *aff'd* 840 F. 3d 1016 (9th Cir. 2016) (holding that Plaintiffs received adequate notice and consented to the TOS—and the arbitration provision contained therein—where they clicked a button "during the account creation and registration process . . . that appeared near a hyperlink to the TOS to indicate acceptance of the TOS"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (under California law, click-through agreements require acknowledgment of assent by click); *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements have been routinely upheld by circuit and district courts.").[6]

Multiple courts in various jurisdictions throughout the United States have already considered Airbnb's sign-up procedure and have compelled arbitration upon finding that the process adequately notifies users that they are agreeing to arbitrate their disputes with Airbnb. *See e.g.* Order [100], *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 16-02589 c/w 16-3760 (E.D. La.

---

53 (5th Cir. 1994) (applying Illinois law based on choice-of-law clause in parties' distributorship agreement).

[6] Again, Louisiana law is aligned with California, and courts routinely enforce "clickwrap" or "scrollwrap" agreements under Louisiana law. *See Hill v. Hornbeck Offshore Servs., Inc.*, 799 F. Supp. 2d 658, 661-62 (E.D. La. June 30, 2011).

Feb. 10, 2017) (granting Airbnb's motion to compel arbitration where party agreed to terms of services which included substantially the same arbitration provision at issue here); *Johnson v. Airbnb, et al.*, Circuit Court for Lauderdale County, Alabama Case No. CV-2019-900084.00 (May 20, 2019); *Lee v. Airbnb, et al.*, Circuit Court for Charlotte County Florida Case No. 2019-CA-00086 (May 13, 2019); *Belinsky, et al. v. Duffy, et al.*, Bergan County New Jersey Superior Court Docket No. BER-L-000682-19 (May 10, 2019) (compelling arbitration of non-booking Plaintiffs' negligence claims and booking Guest spouse's loss of consortium claims); *Hunt v. Unitan, et al.*, Los Angeles County California Superior Court Case No. 18STCV07616 (April 19, 2019) ("Airbnb met its burden to show the parties have a binding agreement to submit all disputes to binding arbitration"); *Hernandez v. Airbnb Inc., et al.,* Los Angeles County California Superior Court Case No. BC706648 (Mar. 7, 2019) (holding that Airbnb's TOS and arbitration clause are not substantively nor procedurally unconscionable, including the arbitration provision's limitation on discovery); *Does v. Natt, et al.*, Circuit Court for Manatee County Florida Case No. 2018-CA-2203 (Mar. 7, 2019) (holding that "Plaintiffs' theory of recovery can affect only whether an arbitrable issue exists, and does not affect the existence or non-existence of a written agreement."); *Hatfield v. Bauer*, Sonoma County California Superior Court Case No. SCV-263276 (Mar. 5, 2019) (compelling non-booking Guest to arbitration because: "1) Plaintiffs received the benefits conferred by the terms of service containing the agreement to arbitrate disputes 'arise out of or related to' the use of Airbnb's platform [agreed to by the booking Guest]; 2) [booking Guest] acted as Plaintiffs' agent by booking the accommodation through his Airbnb account, and Plaintiffs ratified [booking Guest's] conduct; and 3) Plaintiffs created an Airbnb account and consented to the terms and conditions containing the arbitration clause when he agreed to the Terms of Service *himself* after the incident and before the Complaint was filed." (emphasis in original)); *Krivickas*

*v. Airbnb*, Circuit Court of Cook County, Illinois Case No. 18M112834 (Dec. 19, 2018); *Du Ju v. Lacombe, et al.*, Case No. 3:18-cv-05309-BHS (W.D. Wash. Dec. 5, 2018); *McCluskey v. Henry, et al.*, San Francisco Superior Court Case No. CGC-18-567741 (Nov. 7, 2018); *Fontebo, et al. v. Airbnb, Inc., et al.*, Los Angeles Superior Court Case No. BC686407 (June 14, 2018) (compelling arbitration of non-booking guests' disputes); *McCluskey v. Airbnb, Inc.*, San Francisco Superior Court Case No. CGC-18-563528 (May 30, 2018) (the delegation clauses in versions 6 and 7 of the TOS require that the arbitrator, not the court, decide whether the arbitration agreement is enforceable); *Senders v. Airbnb, Inc. et al.*, San Francisco County Superior Court Case No. CGC-17-561710 (March 14, 2018); *Plazza, et al. v. Airbnb, Inc., et al.*, Case No. 1:16-cv-01085-VSB (S.D.N.Y Jan. 26, 2018); *Mazaheri et al. v. Bob, et al.*, Los Angeles Superior Court Case No. BC658417 (Sep. 21, 2017); *Fogel v. Hacker, et al.*, Los Angeles County Superior Court Case No. BC651607 (August 20, 2017); *Flynn v. Sutcliffe, et al.*, Circuit Court for Broward County, Florida Case No. CACE 17009259 (Aug. 15, 2017); *Stutland v. Airbnb, Inc.*, Los Angeles County Superior Court Case No. BC581681 (March 22, 2017) (compelling arbitration and noting that Versions 2 through 6 of the TOS "are substantively the same"); *Selden v. Airbnb, Inc.*, 2016 U.S. Dist. LEXIS 150863 (D.C. Cir. Nov. 1, 2016); *Hollywood v. Airbnb, Inc.*, Los Angeles County Superior Court Case No. BC601165 (April 20, 2016).

As the court in *Selden* explained:

> The Court must grant Airbnb's motion [to compel arbitration] . . . the applicable law is clear: Mutual arbitration provisions in electronic contracts—so long as their existence is made reasonably known to consumers—are enforceable, in commercial disputes and discrimination cases alike. And Airbnb's sign-up procedures were sufficiently clear to place Mr. Selden on notice that he was agreeing to the company's Terms of Service when he created an account.

2016 U.S. Dist. LEXIS 150863, at *3-4.

The result can be no different here. Seth Donaldson, Cassidy Carter, Amy Donaldson, and Scott Donaldson each assented to Airbnb's TOS through the same sign-up process and after being presented with screens that were substantially similar, if not identical, to those presented to the users in *Hollywood*, *Stutland*, *Fogel*, *Mazaheri*, *Plazza*, *Senders*, *McCluskey*, and *Selden*. *See, e.g.*, *Selden*, 2016 U.S. Dist. LEXIS 150863, at *4-6 (describing sign-up process and confirming TOS was adequately disclosed); Miller Aff. ¶¶ 5-32 (describing each Plaintiffs' sign-up process here). As the court in *Selden* noted, the hyperlinked language located under the sign-up box ("By signing up, I agree to Airbnb's Terms of Service") was conspicuous and, therefore, sufficient to put the Plaintiffs there on notice of the TOS. *Selden*, 2016 U.S. Dist. LEXIS 150863, at *5. In other words, by "choosing to sign up for Airbnb, Selden manifested his assent to the Terms of Service." *Id.* at *2, 5. So, too, did Seth Donaldson, Cassidy Carter, Amy Donaldson, and Scott Donaldson here. In fact, Airbnb's business records confirm that each user agreed to the TOS on multiple occasions—each time assenting to the arbitration provision therein. Miller Aff. ¶¶ 9, 14, 20, 26, 32, Exs. A, B, F, G, K & L. In sum, Amy Donaldson and Scott Donaldson clearly agreed to arbitrate their claims via their assent to the TOS containing the arbitration provision.

As discussed above, each Plaintiff assented to the TOS through the creation and maintenance of his/her own account and is bound by the arbitration provisions therein on this basis alone. In addition, Plaintiffs are also bound by the arbitration provision through Cassidy Carter's booking of the Property by the principle of equitable estoppel. It is settled that equitable estoppel will bind a non-signatory to an arbitration provision where the non-signatory "knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (internal quotations and citations omitted); *see also Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1179 (9th Cir. 2014)

("Federal courts have recognized that the obligation to arbitrate . . . does not attach only to one who has personally signed the arbitration provision. Instead, a non-signatory to an arbitration agreement may be compelled to arbitrate where the non-signatory knowingly exploits the benefits of the agreement. . .") (internal citations omitted); *see Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) (a non-signatory can be bound to an arbitration provision). A nonsignatory "knowingly exploits" the agreement by accepting the benefits of the contract. *Montoya v. Comcast Corp.*, No. 2:15-CV-02573-TLN-DB, 2016 U.S. Dist. LEXIS 130806, at *11 (E.D. Cal. Sept. 23, 2016); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361-62 (5th Cir. 2003) ("Direct benefits estoppel applies when a non-signatory knowingly exploits the agreement containing the arbitration clause."). Under such circumstances, a court will bind a nonsignatory to avoid the inequity that would result if the nonsignatory could "claim[ ] the benefits of the contract," but "avoid the burdens that contract imposes." *Montoya*, 2016 U.S. Dist. LEXIS 130806, at *13-14; *see also Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, (5th Cir. 2004) (applying estoppel and compelling a nonsignatory plaintiff to arbitration because she could not sue based upon a contract and simultaneously avoid the arbitration agreement contained therein); *Bridge v. Credit One Fin.*, 2016 U.S. Dist. LEXIS 44626, at *6-9 (D. Nev. March 31, 2016) (compelling nonsignatory to arbitrate because allegations arose from and directly related to the contractual duties); *Donelon v. Shilling*, 2017-1545 (La. App. 1 Cir 02/28/19), 2019 La. App. LEXIS 363 ("The non-signatory cannot have it both ways; he cannot rely on the contract when it works to his advantage and then repudiate the contract when it works to his disadvantage."). "Whether or not the Plaintiffs actually read the services contract or arbitration agreement is irrelevant." *Montoya*, 2016 U.S. Dist. LEXIS 130806, at *14.

Here, Plaintiffs unquestionably assented to the arbitration clause through the creation and

maintenance of their accounts. Nonetheless, Plaintiffs claims are so inextricably entwined with Cassidy Carter's use of Airbnb's platform and services that equitable or direct-benefit estoppel also independently compels enforcement of the arbitration provision. Plaintiffs' allegations in their Petition all arise from Seth Donaldson's visit to and use of the Property, which directly resulted from Cassidy Carter's reservation that she made using the Airbnb platform. It would be inequitable to allow Plaintiffs to rely on and enforce the provisions of the TOS that inure to their benefit, but simultaneously dismiss the contractual obligations the TOS imposes. Their claims are inextricably intertwined with and dependent upon the TOS Cassidy Carter agreed to with Airbnb. There is no way to extricate Plaintiffs' claims from the TOS, and Plaintiffs should be compelled to arbitrate their claims.

This Court, however, need not rely upon equitable estoppel to find that Plaintiffs' claims should be compelled to arbitration. As discussed above, Amy Donaldson and Scott Donaldson, each individually assented to the arbitration provision. As such, they are bound by its terms. *See* Order [100], *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 16-02589 c/w 16-3760 (E.D. La. Feb. 10, 2017) (granting Airbnb's motion to compel arbitration where party agreed to terms of services which included substantially the same arbitration provision at issue here).

**C. The Delegation Clause is "Clear and Unmistakable" and Thus Compels Arbitration of All Gateway Issues Including Scope**

Because assent is established, the only question remaining is whether the delegation clause in the TOS is enforceable. It is well established that parties to an arbitration agreement can delegate gateway issues of arbitrability, such as validity, enforceability, and scope to the arbitrator. *First Options of Chicago*, 514 U.S. at 943; *Rent-A-Center, West. Inc. v. Jackson*, 561 U.S. 63, 71-74 (2010) (upholding enforceability of an "agreement to arbitrate threshold issues" regarding the arbitrability of the dispute); *Sandquist v. Lebo Automotive*, 1 Cal. 5th 233, 243 (2016) ("'who

decides' [issues of arbitrability] is a matter of party agreement"); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 551 (2004) (noting that who decides arbitrability depends on the parties' contract, and compelling arbitration of gateway issues); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (arbitrability can be delegated to arbitrator by parties). As the Supreme Court just recently and unanimously held, when a contract delegates threshold questions of arbitrability to the arbitrator, a court must honor the parties' contractual decision and refer the matter to arbitration without exception, and without making its own determinations about arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Delegation clauses are enforceable if they are "clear and unmistakable." *Rent-A-Center., W., Inc.*, 561 U.S. at 79-80; *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2010); *see Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so); *Dream Theater*, 124 Cal App. 4th at 552 (when parties "clearly and unmistakably" delegate issues of arbitrability to the arbitrator, the arbitrator, not the court, decides gateway issues of arbitrability); *see also Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553-56 (5th Cir. 2018) (enforcing delegation clause where scope was broad and parties clearly intended to delegate arbitrability to the arbitrator); *Jasper Contractors v. E-Claim.com, LLC*, 2011-0978 (La. App. 1 Cir 05/04/12), 94 So. 3d 123, 133 (when clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator exists, the court does not decide these issues).

Courts agree that express delegation language in the arbitration agreement satisfies the "clear and unmistakable" standard. *Rent-A-Center., W., Inc.*, 561 U.S. at 79–80; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (*en banc*) (evidence of a "clear and unmistakable" delegation includes ". . . an express agreement to do so"); *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (holding that where a delegation clause is clear and unmistakable, the parties provided for the arbitration panel, rather than the court, to decide arbitrability); *Fla. Gas Transmission Co., LLC v. Tex. Brine Co., LLC*, 2017-0304 (La. App. 1 Cir 12/06/18), 267 So. 3d 633, 637.

The delegation language in the arbitration provision here is "clear and unmistakable." It states that "any dispute . . . arising out of or relating to these Terms or the breach, termination, enforcement or interpretation . . . will be settled by binding arbitration." TOS at p. 20, §19.4. It further provides: "If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue." *Id.* Accordingly, the parties have expressly delegated all disputes concerning the validity, enforceability, or interpretation of the arbitration provision to the arbitrator, and the Court's inquiry must end.[7]

Indeed, courts have repeatedly interpreted language more ambiguous than Airbnb's TOS as meeting the "clear and unmistakable" threshold constituting valid delegation. In *Mohamed v. Uber Techs., Inc.*, for example, the court did not hesitate to find that the phrase "the enforceability,

---

[7] Additionally, the arbitration provision incorporates the American Arbitration Association ("AAA") Consumer Arbitration Rules, which give the arbitrator the authority to rule on his or her own jurisdiction. TOS at p. 20 § 19.2; *see also* AAA Commercial Arbitration Rule 7 available at www.adr.org, under "Rules" tab ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); *Petrofac*, 687 F.3d at 674-75 ("[T]he express adoption of these [AAA R]ules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.")

revocability or validity" was sufficiently "clear and unmistakable" to delegate all issues pertaining to arbitrability to the arbitrator. 836 F.3d at 1106-08. Likewise, in *Momot*, the Ninth Circuit affirmed the arbitrability of gateway issues where the contract language was similar to that at issue here, and stated: "If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4* [the arbitration provision] . . . the dispute shall be resolved exclusively by binding arbitration." *Momot*, 652 F.3d at 988 (emphasis added); *see* Order [100], *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 16-02589 c/w 16-3760 (E.D. La. Feb. 10, 2017) (granting Airbnb's motion to compel arbitration and thereby enforcing the TOS' delegation clause).

The language of the TOS is substantively indistinguishable from the sufficiently "clear and unmistakable" delegation clauses consistently enforced by the Fifth and Ninth Circuits. As such, the parties have authorized the arbitrator to rule on his or her own jurisdiction—by interpreting the contract to determine whether Plaintiffs' claims fall within its scope. Accordingly, the elements of assent and scope are both satisfied here, and this Court must compel arbitration.

**D. The Litigation Should Be Stayed Pending Arbitration**

Section 3 of the FAA requires courts to stay litigation upon referring a dispute to arbitration. 9 U.S.C. § 3. Here, a stay is appropriate because Plaintiffs agreed to arbitrate all claims as well as any gateway issues of enforceability, scope, and validity. *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014) (adopting rebuttable presumption that actions are stayed pending arbitration if not expressly dismissed); *Grear v. Comcast Corp.*, No. C 14-05333 JSW, 2015 U.S. Dist. LEXIS 26643, at *5-6 (N.D. Cal. Mar. 3, 2015) (staying litigation under FAA § 3 upon referring dispute to arbitration); *see Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603, 605-06 (5th Cir. 1994) (holding that a stay was mandatory because the issues in the case were within the reach of the agreement and the district court had no discretion to deny

one).[8] Pursuant to the arbitration agreement assented to by Plaintiffs, the Court should compel arbitration of all claims against Airbnb and stay the pending litigation.

## IV. CONCLUSION

The arbitration provision is clear, and so is federal, California, and Louisiana law: this case should not proceed in this Court because Plaintiffs assented to the arbitration provision and Plaintiffs' claims fall squarely within its scope. Accordingly, this Court should issue an order compelling Plaintiffs to arbitrate their claims pursuant to Airbnb's Terms of Service, and stay the litigation pursuant to section 3 of the FAA.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Jeffrey A. Clayman*
Jeffrey A. Clayman (Bar #30442)
Arthur R. Kraatz (Bar #35194)
Sarah Smith-Clevenger (Bar #38412)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: jeffrey.clayman@phelps.com
arthur.kraatz@phelps.com
sarah.smith-clevenger@phelps.com

ATTORNEYS FOR AIRBNB, INC.

[8] Section 9:4202 of Louisiana's Binding Arbitration Law similarly mandates a stay where a plaintiff's claims fall within the scope of a valid arbitration agreement:

> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2019, a copy of the foregoing pleading was filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ Jeffrey A. Clayman*
Jeffrey A. Clayman